First case for the day, United States v. Donald R. Miller May it please the court, my name is Ronald Krauss, I'm an Assistant Federal Public Defender for the Middle District of Pennsylvania and I represent Appellant Don Miller. I'd like to reserve two minutes for rebuttal. It's granted. Thank you. I'd like to address three issues that are addressed in my brief. The concurrent sentence issue, the enhancement for obstruction of justice, specifically perjury, and the insufficiency of evidence for count one receipt of child pornography. Before we get started, the concurrent sentence issue, Judge Pollack raised a question that we didn't answer but wondered if you might. The sentence, what was the sentence that was imposed here, 46 months? Yes. Wasn't, isn't there a mandatory minimum on the receipt of crime of five years? Oh, good. I'm sorry that escaped me. Apparently your colleague would know. Well, maybe he can address it during, you can address it during your. I'm sorry that escaped me. Okay. All right. You proceed. My understanding of the guideline calculations were that a range, that they were able to work within the range, which here I believe was 46 months. What was the bottom of the range as calculated by the judge? It was 46 months. Yeah. And that was for both counts, one and for count four. And what we're asking for is that if the court does uphold the convention for count one, the receipt, that it remand and vacate the count one, I'm sorry, the count four possession count. As a lesser included. As a lesser included count that's consistent with the Supreme Court's holdings in Ball and Rutledge. Ball was involved in analogous firearm statutes where there was also possession and receipt counts. And there the court held that it was impermissible to also punish. Does one vacate the lesser offense or leave it up to the judge to select which of the offenses he's? Well, if the judge would be willing to vacate the count one receipt charge, that would certainly be acceptable for us. Because then the guideline for the possession charge is 15 as opposed to 17, level 17 for the receipt charge. But that's not what would happen, would it? I mean, the lesser included offense is the possession charge. And wouldn't it be that one that would be vacated or not? Typically, that's what happens. But as Judge Pollack says, the court wants to leave it up to Judge Reuben's discretion. Maybe I just made it up. But I rather thought there was language by Chief Justice Berger in the Ball case, which suggested that it would be up to the sentencing judge on remand to select which of the two offenses to proceed. Well, I may have missed that, Your Honor. And if I did, I apologize. And I'm certainly happy to concur with you on that point. Well, if I'm wrong, I'll follow your instruction and apologize. But I don't feel wrong. Could you address the sufficiency of the evidence with respect to the receipt offense? Yes. And maybe tell us what you think has to be shown in order for proof of receipt beyond a reasonable doubt and how that fell short here. Well, that's actually, I think, a difficult question, Your Honor. The case law seems to be almost entirely devoid of any clues to what really the distinction between possession and receipt is in these cases. The only discussion I've seen seems to focus on fairly vague discussions of receipt as taking of possession. It seems to be a somewhat more active role that the defendant takes as opposed to a passive possession. We don't know how he got either the disk itself or the pictures on the disk. That's exactly right. And if he had found the disk in a gutter somewhere, would he be found guilty of receipt of child pornography? Well, I think if there was evidence, I would be willing to go so far as to say if there was evidence that he found the zip disk, and knowing what it was and knowing what was in it, took it, that that would be beyond possession or beyond receipt. All right, so it has to be knowing receipt. It has to be knowing receipt. And actually, the government's brief made that point. At page 46, it referred to the Seventh Circuit decision in U.S. v. Myers, which cited the Supreme Court's decision in U.S. v. Excitement Video, which was a 1994 Supreme Court case. And the Myers case noted that a person who is guilty of possession may not be guilty of receipt in some circumstances. And I'll just briefly quote, a person who seeks out only adult pornography but without his knowledge is sent a mix of adult and child pornography will not have violated the child pornography statute. Well, you know, in this case, don't we have, I mean, there are titles. He's got a password. It's a little more active than I think your brief tends to categorize it, right? Well, respectfully, Your Honor, I think, first of all, the fact that there are titles to. Specific titles. Specific titles to files. There's no way to infer from that that he ever saw and there's no evidence that he ever saw those titles or that he knew that they were there. Secondly, as to his password, he admitted that he had a collection of adult, legal adult pornography. And the fact that that was password protected seems to me of no great moment. I think what really is significant here, and it's really not my argument that the FBI was, and I think it's fairly remarkable that the FBI, with all its forensic powers, was unable to get any evidence here linking Mr. Miller to that zip disk. And I think it comes out very clearly, and with the Court's indulgence, I'll refer the Court to the rebuttal cross-examination of FBI agent Price. And that's at the appendix pages 425 to 428. And in that cross-examination, I think it's really compelling how little the FBI was able to determine. The question is, do you agree with Mr. Smith's – that's the defense expert's – testimony that there was no child pornography found on the hard drive? I would agree with that. And do you agree that there was no evidence of Mr. Miller visiting the website? I would agree with that, yes. Would you agree that there was no evidence of Mr. Miller partaking in email exchanges? I would agree. Would you agree that there is no evidence of any kind on Mr. Miller's computer of the Utah images, which is what led to this whole investigation? I would agree. Do you agree that there is no evidence of Mr. Miller overtly going out and seeking child pornography? I would agree there is no Internet activity relating to child pornography, yes. In fact, do you disagree with the conclusion that there is no identifiable connection between the zip disk and Mr. Miller's hard drive? And I think this is telling for the government's case. I would probably not disagree, except it being next to the computer. So just because it was in his possession, sure. But there was no objective fact that you discovered linking the two, not during my examination. And then the government attorney seeks to rehabilitate him by saying, well, maybe he used the other computer in the house. But on cross-examination, he was asked, did you examine the other computer? He asked, we examined both. Was there any evidence whatsoever on that computer that he used that computer to obtain these images? No, not that I'm aware of. And finally, and I think this is also telling, on page 293 of the appendix in the initial cross-examination, Mr. Price has asked, it's very possible. What page is this you are on now? 293. It's very possible that these files were never viewed at all. Is that correct? Any answers? Just as possible as they were viewed. You can't tell. What we have is creation date and access, last access dates, correct? There are, Your Honor, but as the age intensified, those can be, my technical knowledge is somewhat limited here, Your Honor, I'm afraid. But those access dates can be affected or initiated by an antivirus program that would sort of automatically sweep through the computer. So, again, you really can't tell. It is possible that he viewed those tapes, and we can't say that it was impossible. But the FBI agent, as much as said, you can't tell. It's a guess. He couldn't even say it was more likely than not that Mr. Miller viewed these. Question about knowing receipt.  Yes. Out of? About 1,000 on the zip disk as a whole. Was it in evidence that there were more than 11, but these were just the ones chosen, or was that, it was proven that there were 11? There were 11. Whether there were more, I think, is not part of the record that the government was interested in moving forward on. Let me ask you a question about your lesser included argument, because your time seems to be running out. What is the standard of review on that? You seem to concede that it's clear error because you didn't raise it below. Isn't it a legal question, though? It is a legal question, and so we would certainly prefer that the court review it on a plenary basis. It was not raised below. As a result, we may be relegated to plain error. Again, if I'm wrong on that, I'm happy to take correction from the court. I would like to, with respect to the standard of review, I would like to speak briefly to the point that was made in the government's brief, that the insufficiency argument needs to be reviewed on plain error because the motion for acquittal was made pursuant to 29C rather than during the trial. The government quotes from a case, U.S. v. Morning, which is a 2005 case. Respectfully, Your Honors, I think that case is an anomaly. And I think it's contrary to prior precedent and the plain language of Rule 29. Just very briefly, the Morning decision cites the case of United States v. Gatos for support. When I look at Gatos, it says nothing about the timing of the motion for acquittal other than it be made timely. It doesn't say that it has to be made during trial. And Gatos relies on a case, United States v. Zollicoffer, 869 F. Second 771, a 1989 case. And in that case, the court stated specifically that defendants in that case didn't preserve the sufficiency argument either by renewing their motion for judgment of acquittal at the close of the evidence or by filing a timely post-verdict motion. So in that Zollicoffer case, the court clearly thought it was proper to make the 29C post-verdict motion and the issue be preserved. Where the Third Circuit changed from Zollicoffer to Morning, if it ever did, is not clear to me. So I think that the Morning case is kind of an anomaly. I see my time is up. All right. We'll hear from you on rebuttal. Thank you. You didn't get to the obstruction, did you? No, I didn't. Let's do that. Let's argue that. So then the government's counsel can respond to that instead of doing that later. Let's give you another three minutes to go into that. Thank you, Your Honor. On the perjury issue, I'll confine myself just on the issue of falsity. And I think Justice Berger's opinion in Bronson is critical there because he makes two important points that apply here. That as a predicate for perjury, a precise question is imperative. And that it is the lawyer's responsibility to flush out the whole truth with the tools of adversary examination. Here the question was not precise and the government lawyer did not flush out the whole truth.  First the question asked about pictures. And the context here is critical because immediately before the question and answer issue, and you recall the question was, did you have sadomasochistic pictures? The answer was, not that I'm aware of, no. So immediately before that question, Mr. Miller testified that he had a small collection of adult pornography, yes. It was primarily playboy images. But then the next substantive question mixes apples and oranges. It says, the question was, did you have sadomasochistic pictures? The question was not, did you have sadomasochistic images? The question was not even, did you have sadomasochistic pictures in your computer file? The question was, did you have sadomasochistic pictures? And taking the question on its face, purely on its face, with negative response, with truthful. Because Miller had no pictures. He had no hard copy pictures of sadomasochism. The second way it was imprecise was in the use of the word. But he did have images of sadomasochism. He had images, but he wasn't asked about images. He was asked about pictures. And I think particularly given that Mr. Miller had specifically testified that he had these playboy images, he was thinking images, and he's asked about pictures. He didn't have any pictures. Now, the second way was... Is there anyone, maybe you don't need expert testimony, maybe this is... But is it so clear that these were sadomasochistic as that is defined, as a defined term? Well... And maybe that's the question I ask your colleague. Well, I think we did stipulate that at least a couple of... I think we did stipulate that at least a couple of the pictures were sadomasochistic. Okay, so a couple were, but do we know... Yes. Objectively, they were. Do we know what Mr. Miller knew about what was and what would and would not be considered sadomasochistic? No, we certainly don't. The question was simply, do you have sadomasochistic pictures? And several cases cited in my brief state that to find perjury, you must demonstrate that the defendant is fully aware of what the question is. And there was no such demonstration here. There was no follow-up. I see my time's up. All right, just one second. Anything further? No. All right, we'll hear from you on rebuttal. Thank you. May it please the Court, Your Honors, my name is Christopher Sonic. I'm an assistant United States attorney, and I represent the government here today. And I was trial counsel. So if there were any trial advocacy lapses, they fall on my shoulders. Well, how do you think you prove knowing receipt of child pornography? Your Honor, I think these cases, with the modern technology, boil down to what I would call drug cases plus complexities. For example, if it were a case where a guy had a safe, and he had the password to the safe with a combination, and the police go in and find drugs in the safe, surely a jury can draw the inference that the drugs were his, much like he has a password to a zip disk, and there's child pornography contained in that container. But that proves the possession. And I believe it's cited in our brief that one of the things that a jury can consider in whether there's a knowing receipt is it can also consider the evidence of a knowing possession. That's, I believe, Payne from the Fifth Circuit, which is on page 44 of our brief. But let me outline the evidence that I think circumstantially shows a knowing receipt. Because obviously, unless somebody was over the shoulder of the defendant while he was at the computer taking videotapes or taking notes, these cases necessarily are defendants committing solitary acts by themselves. But usually there's a trail, and you can chart that trail. The experts can say, I see he got it from here, and it seems to be in the computer area that you can prove receipt just so easily. Well, here's the problem with this case. This defendant has a very old computer with a very small hard drive, and the reasonable assumption is that's why he was outboarding the stuff to the ZIP disks. In fact, the search in this case was conducted, we believe, over a year after you see some of these file creation dates in 2002. And that brings up, by the way, not to digress, Judge Pollack's question. The reason why there's no 5-year mandatory here is we charged the specific receipt prior to the PROTECT Act, which took effect April 30, 2003. So that answers that question. So you have, really, you have uploading activity to Utah that leads back to the defendant's house. Admittedly, the jury found a reasonable doubt, did not find him guilty on what I'm told. What do you mean that leads back to the defendant's house? What proof was there? There was an IP address that led back to Microlink, and Microlink gave the subscriber information to the FBI. The FBI found that it was the defendant's residence, put in a search warrant, go to the residence, and that's how they find the child pornography and the marijuana. So even though the jury acquitted, there's evidence of computer activity emanating from that house, number one. Number two, as Judge Shigera said, you have the names of these files, and these pictures are stamped with web logos, and they say things like lust for lolitas and facial and just teen porno, just terrible, terrible things. That's circumstantial evidence that these are web pictures. The defendant says to the FBI, I never looked at pornography. My wife got mad at me about six or seven years ago, so I don't do it. A friend of mine may have given me emails with nudes in them as jokes, but I deleted them. There's no pornography on my computer. Now what's telling about this is, my colleague makes an argument in his brief that there's no evidence on the hard drive. The defendant admitted he had nude pictures in emails from his friend that he had deleted. They weren't found on the hard drive either. So I would suggest that the passage of time here, the small nature of the hard drive, the overwriting, very difficult to create a trace. Continuing on. The next thing, the defendant goes to the FBI agent and says, by the way, you're going to find adult pornography on my zip disk. Here's the password. So you have consciousness of guilt that the jury is clearly going to use this circumstantial evidence to find the defendant guilty of both the possession of the child pornography, which I submit is an easy issue because he has the password to a container that contains the contraband, plus the circumstantial evidence is mounting up. But how do you get from possession to receipt? Receipt is different from possession, or is it? It is. Then what is there to show how, where, when, why he received? If I may continue, the evidence, as I said, continues that on the defendant's zip disk, we have categorized, actually, adult pornography. We have the S&M, or as the FBI agent called it, the bondage pornography, the child pornography, and Christmas pictures, the defendant's family Christmas pictures. So the defendant has put these, at least the inference that we can draw and any reasonable jury could draw is the defendant put these on the zip disk. The FBI expert says, if you collect child pornography, it's hard to get. You want to keep them all together. We have creation dates in 2002. There were two adult pornography files found on the hard drive. So once again, that shows some evidence that the computer is used for downloading. He is a self-admitted collector of pornography, and that's, you'll find many places throughout the appendix at 311, 316, 319, and he uses zip disks. The defendant has basically used the computer, even though, as I said, perhaps we're in that guilty verdict on the Utah counts. There's evidence that these are computer pictures. There's evidence that adult pornography is on the hard drive. There's evidence in the record that you can directly download from the Internet to a zip disk. We don't have to rule out all possibilities here, certainly, because, as I said, we don't have somebody staring over the shoulder of the defendant while he's committing this activity. But this facile argument that there's nothing remaining, no trace of the stuff on the hard drive doesn't really work, because, as I said, we have a lot of time that has passed. We have a small drive. We have a hard drive that's overwriting. Plus, we have the particular habits of how this collector of pornography keeps his pornography. He doesn't leave it on the hard drive. He moves it and outboards it to these higher-capacity, floppy, removable media. So just because it's possible. I would submit that, you know, you can't rule everything out here. I mean, sure it is. And I admit we have to prove a knowing receipt, much as we have to prove a knowing possession. But I think the evidence is mountainous, particularly with the consciousness of guilt shown by the defendant's false statements. And I think the jury completely disbelieved his testimony, as they had to. I mean, he lied about even his pornography collection that he made a big deal about was legal and it was adult pornography. It was primarily pornographic images.  It's coming from the Internet. So I submit to you, Your Honors, that I think there's enough evidence here to show not only possession, but also the receipt in this case. Turning to the obstruction enhancement. Well, let's get to the lesser-included offense. Don't we have clearly a lesser-included offense here? I would submit to you, Your Honor, that if there is sufficient evidence of the receipt, there is. That the possession, at least in this case, I can contemplate a case where you might have a separate receipt and a possession for different amounts of pornography. So you might, in the proper case, have two separate charges. But for here, I would have no problem with the lesser. Does this case really differ from Ball in concept? In concept, not really. I mean, in concept, a possession of drugs, or, excuse me, a possession with intent to deliver drugs, for example, would merge with the actual delivery. So I don't see, really, we're talking about $100 special assessment if the possession itself is vacated. I thought this was the same as Ball. I didn't see any discussion of Ball in your brief. Well, I didn't write the brief. My appellate chief did. But, Your Honor, in this case, that's not really the primary issue here. I mean, the primary issue is the sufficiency of the evidence. So you're almost conceding. I would submit to the court we're talking about $100 special assessment if the possession is vacated. Now, how about Judge Pollack's question of whether it's definitely the possession charge that's vacated or we send it back and give the district court the position? I think, Your Honor, I think the possession merges with the receipt. While the district court, you may send it back to give him a choice, if you look at the sentencing guidelines, the receipt is treated more harshly. It's two levels higher. Well, I think the question is, do we send it back for the district judge to do, or do we do it? I think you can do it. In the interest of judicial economy, I mean, it seems like a futile gesture to send it back for a forum we're going. Pursuant to what the Third Circuit panel has said in its opinion, the possession merges with the receipt. Same sentence. Chief Justice Berger seemed to think it was a matter of district court discretion. Then so it is. We wouldn't want to interfere with that. Then so it is, Your Honor. It's our most precious possession down in the district court. Precisely. What's the standard of review, I ask your adversary? Is it clear error, or is this just a plain old legal question that you've got to answer? You mean the legal question of whether it merges or not? Yeah, I think it's a plain old legal question. I do. I mean, I think there's a factual basis, as I said, because in some cases you might have a separate receipt and a possession different, but here I think we can tell clearly what it is. It's a plenary review. Turning now to the obstruction. Although I will note we've got a case, United States v. Jackson, where it was a drug case, possession and possession with intent, and we held it was a plain error standard, but that there was a plain error. Right, exactly. Same distinction. Same distinction. Turning to the obstruction enhancement, which enhanced the defendant's sentence by two levels, the defendant makes the argument here that the question was ambiguous and the answer was nonresponsive because he cites Braunston. Braunston is the landmark Supreme Court case. And I went back and looked at the question in Braunston. Braunston was the producer of the movie All Seen. He was charged with, I believe, some sort of money laundering or tax evasion. The question asked by the prosecutor in Braunston was, quote, have you ever had any Swiss bank accounts? And Braunston answered, the company had an account there for about six months in Zurich, and there was no fault. The answer is clearly and unequivocally nonresponsive. The question in this case was straightforward, compelling a yes or no answer. Did you have sadomasochistic pictures? Answer, not that I'm aware of, no. So it's very different than Braunston because everybody answered yes or no. Is that straightforward? The second point here. Is that straightforward? I believe it is. Not that I'm aware of, no. Well, Your Honor, not that I'm aware of is one of those tag phrases the defendants at trial use, like not within my recollection, I do not recall, I have no memory of, because I. . . Are you trying to prove he's schooled in this? I mean, someone may say something to me, you know, have you, you know, did you eat fish in the last week? Right. And I say, not that I'm aware of because, quite frankly, I can't answer yes or no because I would have to think about it a little bit more. I understand. And also maybe I'm like, well, what's fish? Does that include crab? Does that include whatever? I mean, how do we know that that's so straightforward and that his response is something that's. . . Well, here's another thing to consider. In Braunston, and I think we have to make this clear distinction, Braunston wants sufficiency of the evidence beyond a reasonable doubt for a perjury conviction. A perjury conviction. We're talking about an enhancement here where proof is by a preponderance. So I suggest to you that Braunston doesn't control the day or win the day for the defendant. The district court was in a position. . . Well, but proof by a preponderance of what? Of perjury. I mean, it's within the perjury aspect of obstruction that you're trying to. . . Yes, the defendant's real false statement, correct. All right, so how does it satisfy the perjury test? By a preponderance. It satisfies it if you look at the context, Your Honor, of in particular how he answered the other questions. He was described by the district court as cagey and invasive, and I would submit I made the argument before the district court, Judge Muir, that he had also perjured himself on his wife or whomever's possession of the marijuana, but the district court disagreed with me. But that's not what you're. . . You're pointing to this specific answer. Correct. Was this material, whether something was sadomasochistic or not? It was material because, as the district court found, the defendant was using a kind of confession avoidance defense, which was I'm going to confess some sort of sin, which is, I collect pornography, to a jury so that they'll acquit me of the child pornography. In other words, I'm going to be so up front with you that you will find a reasonable doubt in the child pornography, or, as the district court said, to put his collection in a more palatable light to the jury. And he opened the door to it. He said he had a primarily playboy-like collection of pictures. I did not ask the question. He opened the door to it, and it was fair game to contradict him, which I think if you look at the pictures in his record and see them, there's no doubt they're sadomasochistic pictures. And I think for a collector of pornography, who had bondage pictures next to adult pornography pictures, next to child pornography pictures, next to Christmas family pictures on a zip disk, I think the reasonable inference from that is it's clear he knew what I was talking about. You say there's no doubt. There's no doubt that you and Mr. Miller had the same notion of what the word sadomasochistic meant? I believe we did, Your Honor. And that that was shared by the jury? Is that a term of art that all of us know? Your Honor, if Mr. Miller were unfamiliar with the term sadomasochism, he would have said, I don't know what you're talking about. And I know my opponent believes that I should have actually saved him from the enhancement by describing the pictures in detail, which, as you'll recall, the court would not allow me to show the jury the actual sadomasochistic pictures. So here I'm in a position where I can't show the pictures to the jury, so I'm not describing them. I'm left with what I have here, and Mr. Miller has not asked, can you explain the meaning of sadomasochism to me? Can you explain the meaning of pictures to me? He says, not that I'm aware of, again, the sort of equivocal tag. No. What about the distinction between images and pictures? Is that material? In the heat of trial, that's a distinction without a difference and a semantic issue. And I see my time is up. If you have any questions for me. Thank you. Thank you. Just very briefly, I'd like to reiterate the point that Mr. Visanic made on the Utah link between Mr. Miller's computer and the Utah images, that the FBI agent at Appendix 425 agreed that there was no evidence of any kind on Mr. Miller's computer equipment of images from that Utah website. I'd also like to refer to the government's argument that there was no trail here in the computer equipment or the storage media because of various technological difficulties, but I think the court is very well aware that the FBI's forensic capabilities are, to the chagrin of many of our defendants, quite powerful. And the fact that they couldn't find anything here is quite remarkable. What about the Christmas pictures? What about the fact that this zip disk had things that necessarily were his and he admits he has a collection, he is a collector of pornography. There is pornography on here. Doesn't this add up to two plus two is four? How is there not enough here? What did there have to be that there wasn't? There should have been some indication that he had accessed those particular child pornography images. Well, there's indication he accessed adult pornography. He basically admitted to that, correct? Yes, he did. And that the adult pornography, he's not denying that this was his zip disk that he had pictures of adult pornography on, correct? That's correct. And that he got them from the internet. Is that clear? I believe that's correct. Yes, Your Honor. That's true. But there's nothing linking him to the child pornography images. Other than you say he's linked to the adult, so therefore he's linked to the child because they're all in there together. That's what the government argued and that's what apparently the jury found, but there was nothing specific to the child pornography images that was linked to Mr. Miller. Thank you very much. More questions? No, I have nothing. All right, thank you, counsel. The case was well argued. We appreciate it. We'll take the matter under advisement. We'll call our next case United States v. Duncan.